JOHN B. ROBINSON, State Bar No. 297065
jrobinson@cmtrlaw.com
EDWARD VIEIRA-DUCEY, State Bar No. 251405
evieira-ducey@cmtrlaw.com
CASTILLO, MORIARTY, TRAN & ROBINSON
75 Southgate Avenue
Daly City, CA 94015
Telephone: (415) 213-4098

Attorneys for Defendants
CITY OF ANTIOCH and MICHAEL MELLONE

CHESTER E. WALLS, State Bar No. 286398
cew@litg-engr.com
LITIGATION ENGINEERED
1300 E. Shaw Avenue, Suite 125
Fresno, CA 93710
Telephone: (559) 221-2775

Attorney for Defendant
OFFICER J. EWART

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN WADE, an individual<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ANTIOCH, OFFICER M. MELLONE, OFFICER J. EWART, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 4:23-cv-01130-DMR<br><br>**DEFENDANTS CITY OF ANTIOCH, JACOB EWART AND MICHAEL MELLONE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date: November 7, 2024<br>Time: 1:00 p.m.<br>Judge Donna M. Ryu<br><br>Trial: None Set |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on November 7, 2024 at 1:00 p.m., in Courtroom 4 of the above-entitled Court, located on the 3rd Floor, 1301 Clay Street, Oakland, CA 94612, Defendants City of Antioch ("City"), Michael Mellone, and Jacob Ewart ("Defendants") move to dismiss the 42 U.S.C. § 1983 claim alleging racial bias in violation of 42 U.S.C. § 1981 (Second Cause of Action) from the Third Amended Complaint ("TAC") (ECF 58), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds of failure to state a claim. The

1

MTD TAC
4:23-CV-01130-DMR

City also moves to limit the scope of the viable *Monell* claim (Third and Fourth Causes of Action) to a Section 1983 theory based solely on a widespread custom and policy.[1]

After multiple opportunities, the only remaining claim should be the alleged unreasonable search of a room in Plaintiff's home and the alleged seizure of unspecified property. The related *Monell* claim should be limited to a widespread custom theory under Section 1983.

This Motion is based on this Notice of Motion, the Supporting Memorandum of Points and Authorities, all pleadings and papers on file in this action and any documents of which the Court may take judicial notice, and upon such further oral or written argument as may be presented at the time of the hearing or otherwise considered by the Court.

**STATEMENT OF RELIEF SOUGHT**

Defendants seek an order in their favor and against Plaintiff pursuant to Federal Rules of Civil Procedure 12, dismissing portions of the Plaintiff's TAC (ECF 58).

**STATEMENT OF ISSUES TO BE DECIDED**

This motion addresses the following issues:

1. Whether Plaintiff sufficiently plead a Section 1981 claim;
2. Whether Plaintiff sufficiently plead a Section 1983 *Monell* claim based on an official written policy, ratification, or failure to train, supervise, or discipline;
3. Whether Plaintiff sufficiently plead a *Monell* claim under Section 1981.
4. Whether Plaintiff has alleged a viable conspiracy claim.

Dated: September 26, 2024

CASTILLO, MORIARTY,
TRAN & ROBINSON, LLP

By: /s/ John B. Robinson
PATRICK D. MORIARTY
JOHN B. ROBINSON
Attorneys for Defendants
CITY OF ANTIOCH and MICHAEL MELLONE

Dated: September 26, 2024

LITIGATION ENGINEERED

By: /s/ Chester E. Walls
CHESTER E. WALLS
Attorneys for Defendant
OFFICER J. EWART

---

[1] *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978).

2
MTD TAC
4:23-CV-01130-DMR

# Table of Contents

Page

Table of Authorities ……………………………………………………………………..ii-iv

 **I.**   **<u>INTRODUCTION</u>** …………………………………………………………..…..1

 **II.**   **<u>STATEMENT OF FACTS</u>** …………………………………………………….2

 **III.**   **<u>ARGUMENT</u>** ……………………………………………………………….5

  **A.**   **Standard of Review** ………………………………………………….5
  **B.**   **The TAC Fails to State a Viable Section 1981 Claim** …………………5
  **C.**   **The Section 1983 *Monell* Claim Should be Limited to a Widespread Custom of Warrantless Searches of Places and Seizures of Property** ……………………………………………...7

  **D.**   **Plaintiff Improperly Suggests a Conspiracy Claim Without Supporting Allegations** …………………………………………….12

 **IV.**   **<u>CONCLUSION</u>** ……………………………………………..………….12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ……………………………………………………..………5

*Bagos v. Vallejo*,
    No. 2:20-CV-00185-KJM-AC, 2020 WL 6043949, (E.D. Cal. Oct. 13, 2020) ……….9, 10

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696, 699 (9th Cir. 1990) ……………………………………………………….5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554, 570 (2007) ………………………………………………………………..5

*Chapman v. Higbee Co.*,
    319 F.3d 825, 833 (6th Cir. 2003) ……………………………………………………….7

*Domino's Pizza, Inc. v. McDonald*,
    126 S. Ct. 1246, 1249 (U.S. 2006) ……………………………………………………...5

*Evans v. McKay,*
    869 F.2d 1341, 1344 (9th Cir. 1989) …………………………………………………….5

*General Bldg. Contractors Ass'n. Inc. v. Pennsylvania,*
    458 U.S. 375, 391 (1982) ………………………………………………………………..5

*Gillette v. Delmore*,
    979 F.2d 1342, 1346-47 (9th Cir. 1992) …………………………………………………8

*Guice v. City of Fairfield*
    (E.D. Cal., Nov. 16, 2006, No. 2:06-CV-1377-MCE-EFB) 2006 WL 8458911, at *2 …...5

*Hunt v. Jaglowski,*
    665 F.Supp. 681, 683 (N.D.Ill.1987) …………………………………………………….5

*Lujan v. Defenders of Wildlife*
    (90-1424), 504 U.S. 555 (1992) ………………………………………………………...6

*Monell v. New York Dept. of Social Services*,
    436 U.S. 658 (1978) ……………………………………………………………..*passim*

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886, 932 (1982) ………………………………………………………………7

*People v. Terryon Deshann Pugh,*
    Contra Costa County Superior Court case no. 1-197638-0 …………………………..12

## I. INTRODUCTION

Since filing her initial complaint more than 18 months ago, Plaintiff's case has shifted focus.[2] While the original complaint targeted the officers' response to Plaintiff's 911 call on March 11, 2021, she has latched onto time-barred events, including incidents she did not witness or have involvement in, such as unrelated criminal actions.[3]

Last month, the Court dismissed the Section 1981 claim and instructed Plaintiff to specify the alleged injury and what compensation she seeks, if she amended. (See **Exhibit A** attached to the Declaration of John Robinson, the transcript from the August 22, 2024 hearing on Defendants' Motion to Dismiss portions of the Second Amendment Complaint ("SAC") (hereinafter "Transcript"), at 6:3-17). Plaintiff amended but did not comply with the Court's Order. She continues to fail to identify the specific injury and attempts to bootstrap time-barred incidents in support of her alleged Section 1981 claim.[4]

Like previous complaints, the TAC fails to allege any racist or unprofessional conduct by the responding officers on March 11, 2021, instead relying on unrelated, time-barred incidents and legal conclusions.[5] (See *e.g.*, ECF 58 at ¶¶ 91-106). Plaintiff shifts focus away from the core issue: whether the officers unlawfully entered her home after she called 911 in a "hysterical" state.[6] The inclusion of time-barred events is an attempt to obscure the weakness of Plaintiff's sole viable constitutional claim under the Fourth Amendment for unlawful search or seizure.[7] The

---

[2] The trial is set to begin in 291 days and Defendants have already deposed Plaintiff.
[3] See ECF 58-1, Exhibit A (Declaration of Claire Kim, Ph.D. in Support of Defendant Pugh's Motion Pursuant to the California Racial Justice Act).
[4] The Court correctly noted about the SAC, "I think it's important for the Defense to be able to understand that, and the [SAC] actually reaches way back." (Transcript at 7:1-11). Referring to the time-barred incidents, the Court stated, "[I]f there's a theory that's scooping all of that in, you need to explain that in the pleading." *Id*.
[5] This is consistent with Plaintiff's recent deposition, where she failed to identify any racist or unprofessional conduct by the officers on March 11, 2021, beyond her broad claim that their response to her 911 call was improper.
[6] It is telling that, despite possessing audio and video recordings of the 911 call and the officers' response, Plaintiff does not reference or quote the recordings aside from the dispatcher's description of her being "hysterical." If the Court holds oral argument, Defendants urge the Court to ask Plaintiff's counsel which "dispatch" agency classified Plaintiff as "hysterical" and whether this separate agency summoned the police.
[7] The Court previously noted that Plaintiff was "scooping all of that in," referring to the time-barred incidents used to support a Section 1981 claim. (Transcript at 7:10-13). This remains

Court should dismiss the Section 1981 claim to appropriately refocus on the single timely claim stemming from March 11, 2021.

As discussed during oral argument, the City also moved to dismiss an unsupported *Monell* claim, which the Court held must be based on a constitutional violation that occurred on March 11, 2021. Despite multiple opportunities, Plaintiff offers only legal conclusions without factual support for a *Monell* theory. The only possibly viable *Monell* claim is the widespread custom theory, which would allege that the City encouraged or permitted unlawful home entries and searches. Other *Monell* theories, such as the Section 1981 *Monell* claim, are distractions unsupported by the facts. Defendants request the Court limit the *Monell* claim to the widespread custom theory and clarify the specific theory moving forward to streamline discovery.

Finally, Plaintiff's attempt to introduce a conspiracy claim has not gone unnoticed. This unsupported claim should be dismissed.

## II.  STATEMENT OF FACTS

The initial Complaint, the FAC, the SAC, and the TAC all allege that Officers Michael Mellone and Jacob Ewart unlawfully entered and searched Plaintiff's home on March 11, 2021. (See ECF Nos. 1, 5, 8 at ¶¶ 6-16, 47 at ¶¶ 28-37, and 58 at ¶¶ 36-47). Plaintiff claims that, although she called 911 and the dispatcher stated that "police would be sent to the home because [she] 'was hysterical,'" the officers "took advantage of a medical emergency..." (ECF 58 at 11-12). Plaintiff did not want the police to respond on March 11, 2021, unlike previous emergencies involving her son, Malad Baldwin. (ECF 58 at ¶ 38).

Plaintiff willingly allowed "Contra Costa Fire Department EMTs" into her home. (ECF 58 at ¶ 39). Officers Mellone and Ewart also entered, but Plaintiff was unaware of their presence "until EMTs brought Mr. Baldwin downstairs on a gurney." (ECF 58 at ¶ 41). Mellone then ordered Ewart and another officer to search Baldwin's bedroom for a knife, which they did. (ECF 58 at ¶¶ 43-45). Plaintiff claims she saw her son alive in the hospital before he died two days later, questioning the coroner's conclusion of suicide. (ECF 58 at ¶ 47). Her initial pro per

---

unchanged in the TAC.

complaint alleged Baldwin "died at [the officers'] hands" due to their "delayed medical transport," but this claim was removed from subsequent complaints. (ECF 5 at 2:20-23).

Plaintiff also cites nine prior instances of alleged wrongful conduct, involving non-defendant officers in all but one case. These incidents are barred by the statute of limitations, claim preclusion, or a lack of standing.

– *2014 Incident*

Like the SAC, the TAC references an April 2014 incident where non-defendant officers allegedly "harassed and targeted Mr. Baldwin because of his race." (ECF 58 at ¶ 16). Plaintiff and Baldwin later filed a lawsuit, which they settled in 2017. (ECF 58 at ¶ 20). Plaintiff does not allege any unlawful entry or unreasonable search during this incident.[8]

– *2017 Incident*

Plaintiff's TAC alleges that non-defendant APD officers demanded to search a U-Haul truck she and her son had rented. (ECF 58 at ¶ 23). Plaintiff consented because she "felt forced to relent." *Id*.

– *2018 Incident*

Plaintiff's TAC claims that "[s]ometime in 2018," non-defendant APD officers stopped her and Baldwin while driving, allegedly for running a red light, which Plaintiff denies. (ECF 58 at ¶ 24). The officers requested Plaintiff's license and registration, and Baldwin's name as the passenger. *Id*. "Eventually, the APD officers returned Plaintiff's license and registration and let them go without any citation." *Id*.

– *2019 Incidents*

Like the SAC, the TAC alleges that non-defendant officers "violently attacked" Baldwin in September 2019 (ECF 58 at ¶ 25) and December 2019 (ECF 58 at ¶ 26). Plaintiff was not present for either incident and does not allege any unlawful search. *Id.*

---

[8] Plaintiff claims she was present and "sustained physical and mental injuries" during the April 2014 incident. (ECF 58 at ¶ 16). If she suggests the alleged physical injuries were caused by the police, it contradicts her recent deposition, where she testified the officers never touched or used force on her during the incident.

– *2020 Incidents*

Like the SAC, the TAC describes a February 2020 incident where Plaintiff and Baldwin "were accosted by [non-defendant] Antioch police officers" at Wal-Mart. (ECF 58 at ¶¶ 27-28). Plaintiff alleges that a non-defendant officer "threaten[ed] them both with a gun, handcuff[ed] their companion, and violat[ed] their civil rights." *Id*. She does not allege an unlawful search during this incident.

Plaintiff also claims that in March 2020, Baldwin was "brutally beaten by Antioch police officers, including Defendant Mellone, in connection with an arrest." (ECF 58 at ¶ 28). She was not present and does not allege unlawful search or unreasonable entry. *Id*.

Plaintiff alleges that twice in 2020, she called 911 because Baldwin was experiencing a "mental breakdown." (ECF 58 at ¶¶ 34-35). APD officers responded and, *in these instances*, she criticizes them for leaving without taking Baldwin into custody or transporting him to the hospital, which she believes was necessary. *Id*. As with the other time-barred incidents, Plaintiff does not allege an unlawful search or entry involving either law enforcement response.

– *Monell Allegations*

Plaintiff does not provide examples of APD engaging in biased policing during home searches or property seizures. Instead, the TAC emphasizes the Contra Costa District Attorney's investigation into former APD officers exchanging offensive text messages about community members. Plaintiff alleges that she and Baldwin were targeted "because they were Black and living in Antioch," citing an April 2020 text message exchange between non-defendant officers that mentioned Baldwin in a demeaning and inappropriate manner. (ECF 58 at ¶¶ 6, 52).[9]

## III.  ARGUMENT

### A.  Standard of Review

A court may dismiss "based on the lack of cognizable legal theory or the absence of

---

[9] Plaintiff does not allege that Mellone or Ewart *sent* any of the text messages under investigation. She claims that Ewart "was part of a text chain" where former APD officers sent racist and/or inappropriate messages. (ECF 58 at ¶ 12). Neither Ewart nor Mellone were alleged to have been on the text chain that referenced Baldwin.

sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). There must be more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

**B.     The TAC Fails to State a Viable Section 1981 Claim**

Plaintiff's Section 1981 claim, pled as a Section 1983 claim, fails on four (4) separate grounds.

– *Failure to Allege Overt Acts of Purposeful Discrimination on March 11, 2021*

First, as the Court noted, it is unusual to base a Section 1983 claim based on a substantive violation of Section 1981. (See Transcript at 7:1-2).[10] Typically, Section 1981 cases involving police officers allege that the officers made or participated in racial remarks or insults against the plaintiff during the incident in question. See *e.g.*, *Hunt v. Jaglowski,* 665 F.Supp. 681, 683 (N.D.Ill.1987). Here, Plaintiff does not allege that the officers made any racial or inappropriate remarks on March 11, 2021, nor any "overt acts" of "purposeful discrimination" on that date. *Id.* at 1345; see also *General Bldg. Contractors Ass'n. Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982).

Absent specific allegations of "motivated by racial animus," the Section 1981 claim fails. *Evans v. McKay,* 869 F.2d 1341, 1344 (9th Cir. 1989). The Court has already ruled that the Section 1981 claim, brought through Section 1983, must be based solely on the March 11, 2021 incident. (See Transcript at 5:10-18). Plaintiff does not allege that the officers made any racial remarks or inappropriate conduct on March 11, 2021, which is consistent with her deposition,

---

[10] The Supreme Court has explained that "... nothing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice. If so, it would not have been limited to situations involving contracts. Trying to make it a cure-all not only goes beyond any expression of congressional intent but would produce satellite § 1981 litigation of immense scope." *Guice v. City of Fairfield* (E.D. Cal., Nov. 16, 2006, No. 2:06-CV-1377-MCE-EFB) 2006 WL 8458911, at *2 (citing *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1249 (U.S. 2006)).

where she admitted to having no evidence of racial animus by any of the responding officers.

– *Improper Reliance on Time-Barred Incidents*

Second, Plaintiff relies on time-barred incidents, most of which involve interactions between APD officers and her son, to infer racial animus by the defendant officers on March 11, 2021.[11] She improperly introduces these incidents, several of which she did not witness and where she did not suffer an "injury in fact." *Lujan v. Defenders of Wildlife* (90-1424), 504 U.S. 555 (1992).

– *The "Guilt by Association" Theory Fails to Support a Section 1981 Claim*

Third, to sustain a viable Section 1981 claim, Plaintiff must allege specific racial animus on the day of the incident – allegations that are entirely absent here. Relying on unrelated, time-barred incidents fails to support her claim.

Plaintiff focuses heavily on the ongoing text message investigation, which does not support her claim that the City maintained a pattern or practice of discriminatory home entries and searches. Instead, Plaintiff improperly advances a "guilt by association" theory.

Plaintiff does not allege that she was seized, subjected to force, detained, or maliciously prosecuted. Rather, she contends that the defendant officers entered her home and searched a room solely based on her race, not the suspicious circumstances that led to her son's death, which she reported in a 911 call. (ECF 58 at 37, 47). Defendants are unaware of any legal precedent that receiving offensive texts is evidence of racial animus or discriminatory conduct in a later search where no evidence of racial animus or discriminatory conduct exists. Plaintiff appears to rely on the assumption that because she is Black, any adverse action must be racially motivated, without presenting supporting evidence of such animus on the date of the incident.

Plaintiff's "guilt by association" theory is flawed. As the Supreme Court held in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 932 (1982), civil liability cannot be imposed solely

---

[11] Notably, Plaintiff does not allege any prior interaction between her or her son and Defendant Ewart. She alleges one prior interaction with Defendant Mellone in March 2020, in which she was not involved. There are no other specific instances alleged that could support a basis to find that she "was subjected to discriminatory police practices by Defendants Mellone and Ewart." (ECF 58 at ¶ 64).

because an individual belonged to a group, some members of which may have engaged in wrongful conduct. Such a theory contradicts the principles of the First Amendment. *Id*.

– *Failure to Clearly Identify the Alleged Injury Underlying the Claim*

Fourth, the TAC does not address the Court's concerns with the Section 1981 claim by failing to clearly identify the specific injury. Instead, Plaintiff inadvertently supports Defendants' argument that the alleged injury is based on pre-incident conduct, which is time-barred.

The Court explicitly warned Plaintiff to clarify "exactly what [events she] is seeking compensation for… to avoid future pleadings challenges" related to incidents barred by the statute of limitations. (Transcript at 6:14-17, 7:5-13). Despite this, her Section 1981 claim continues to "reach[] way back [in time]," alleging time-barred incidents dating back to 2014. *Id*.

In sum, the allegations fail to meet the "high threshold of proof" required for a Section 1981 claim. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc). There is no allegation that the officers demonstrated any racially discriminatory intent on March 11, 2021. The Section 1981 claim must, therefore, be dismissed with prejudice.

### C. The Section 1983 *Monell* Claim Should be Limited to a Widespread Custom of Warrantless Searches of Places and Seizures of Property

The Court determined that any constitutional violation supporting the *Monell* claim must be based conduct from March 11, 2021.[12] (Transcript at 7:17 – 8:6). While Plaintiff has been allowed to proceed on a vague widespread custom theory, the Court has deferred ruling on other *Monell* theories.[13] Despite multiple opportunities to assert additional theories – such as

---

[12] Without a finding of a constitutional violation by a named Defendant on March 11, 2021, the *Monell* claim fails. Given the unique facts of this case, Defendants will present a compelling qualified immunity argument at summary judgment. Defendants have found no case supporting Plaintiff's theory of liability, which essentially argues that officers must strictly adhere to whatever a 911 caller reports – an absurd notion.

[13] To establish *Monell* liability, a plaintiff must prove that: (1) the officer(s) violated his/her constitutional rights pursuant to a formal, express policy; (2) the officer(s) violated his/her rights according to a longstanding practice or custom which equates to standard operating procedure; (3) an official with final policy-making authority knowingly ratified the officer's unconstitutional conduct; or (4) a failure to train, supervise, or discipline caused the alleged constitutional violation. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted). During oral argument, the Court deferred discussion of ratification and failure to train, noting another

unconstitutional written policy, ratification, and failure to train/supervise/discipline – Plaintiff has provided only legal conclusions and *Monell* buzzwords without substantive allegations.

Plaintiff does not claim that the City had an unconstitutional *written* policy causing the alleged constitutional violation, nor does she allege that a final policymaker knowingly ratified unconstitutional conduct. In fact, the TAC does not mention "ratify," "ratification," "policymaker," or any similar term. Any *Monell* claim based on inadequate training or supervision relies solely on legal conclusions, with the supporting allegations in paragraph 74 being purely conjecture.[14]

Notably, Plaintiff removed from the TAC the language in her SAC that alleged APD officers displayed a pattern of "entering Black residents' homes without warrants in violation to the U.S. Constitution." (ECF 53 at 17). This omission reflects Defendants argument that no facts support the existence of an unlawful custom or policy of entering homes unlawfully, regardless of race. However, during argument, Plaintiff's counsel claimed, "[W]hat we're finding is that [] there are numerous examples of searches and seizure[s] of Black residents' homes…" (Transcript at 15:18-24). This is simply untrue, which is why Plaintiff removed the allegation from her TAC. If there were indeed "numerous" examples, Plaintiff would have included them to support the only viable *Monell* theory of unlawful home searches.

Plaintiff's *Monell* claim relies heavily on the Contra Costa District Attorney's "21-page investigative report confirming that [APD officers] … exchanged hundreds of offensive text messages riddled with vile language about community members, especially Black people." (ECF 58 at ¶ 3). Plaintiff highlights a text exchange between non-defendant officers, who did not respond to her home on March 11, 2021, but mentioned her son, Malad Baldwin. (See ECF 58 at ¶ 52). While the findings are very troubling, they do not substantiate that the City maintained a pattern and practice of discriminatory home entries, searches, or responses to 911 calls.

---

round of pleading would follow. (Transcript at 17:2-5).

[14] During oral argument on Defendants' motion to dismiss, the Court agreed with the defense, noting it "didn't see a ratification theory pleaded" and was unsure if a failure to train theory was pleaded. (Transcript at 13:1-10).

8

MTD SAC
4:23-CV-01130-DMR

The TAC references several lawsuits involving the APD, but they fail to establish a pattern or practice supporting a *Monell* claim. (ECF 58 at ¶ 75). These lawsuits do not provide concrete examples of unlawful entries or searches of homes. Instead, they seem to be a list of lawsuits involving APD officers without consideration of the underlying facts, case status, or outcomes. The cases fall into three categories:

> 1. Resolved lawsuits with no admission of wrongdoing (*Bickham*, *Stout*, and *Karunartne*).[15]
> 2. A lawsuit that resulted in a defense verdict (*Rocha*).
> 3. A pending consolidated lawsuit where the allegations are disputed and a scheduling order has not been issued (*Allen*, *Hillard*, *Pugh*, and *Robinson*).

None of the settled cases involved a finding or admission of liability or misconduct. The only lawsuit referenced that went to trial (*Rocha*) resulted in a defense verdict, a fact Plaintiff conveniently omitted. Notably, none of the cases cited to support *Monell* resulted in a Plaintiff's verdict. The remaining cases are part of a contested consolidated action (*Allen, et al*.). Out of the twenty-three plaintiffs in the *Allen* consolidated case, only one (Terry Thomas) alleged an unlawful entry and search of a home (ECF 69 at ¶ 90 of 3:23-cv-01895-VC). Plaintiff misleads the Court by suggesting that "all [plaintiffs]" in this consolidated lawsuit alleged unreasonable searches. In fact, only one plaintiff alleged an unlawful entry or search of a home, while the others alleged unreasonable searches of their person. Plaintiff herself was not subjected to a search of her person on March 11, 2021.[16]

---

[15] *Bickham* alleged that APD officers used unlawful force and illegally searched **his person** incident to arrest. *Stout* claimed officers unlawfully entered his home after APD received a 911 call involving a domestic dispute. *Karunartne* alleged an unlawful arrest and search of his person.

[16] *Bagos* is instructive. *Bagos v. Vallejo*, No. 2:20-CV-00185-KJM-AC, 2020 WL 6043949, (E.D. Cal. Oct. 13, 2020). In *Bagos*, the plaintiff alleged 23 prior incidents as a basis for a widespread custom or policy theory under *Monell*. The *Bagos* court dismissed thirteen of the prior incidents because they were "not sufficiently similar to carry any weight in the *Monell* analysis." *Id*., at 6. For example, because the officers in *Bagos* allegedly used non-deadly force, the court struck *Monell* allegations involving deadly force, profiling and sexual assault, and arrest of subjects filming with a cell phone. *Id*. The same is true here. The Court should strike any allegations that do not involve "sufficient similar" incidents involving an unlawful entry into a home or search of property. *Id*.

Plaintiff also failed to demonstrate how these lawsuits, which involve very different factual circumstances, establish a pattern and practice that would support a *Monell* claim under the facts of this case. Of the lawsuits cited, only the *Stout* case involved officers entering a home. In *Stout*, officers responded to a 911 "hang up" call involving a possible domestic dispute. The others involved entirely different allegations, such as use of force, deployment of weapons, unlawful arrests, and unlawful searches of persons. Plaintiff cannot show that these unrelated claims support a *Monell* theory of liability.

– *The Section 1981 Monell Claim Fails Due to Lack of Substantiated Allegations and Conflicting Arguments*

The Section 1981 *Monell* claim (ECF 58 at ¶¶ 77-106) fails for the same reasons as the Section 1981 via Section 1983 cause of action. It relies on time-barred, irrelevant incidents, distracting from the core issue of whether officers lawfully entered Plaintiff's home on March 11, 2021. None of the cited incidents involve unlawful entry into Plaintiff's home or actions supporting a Section 1981 claim. This *Monell* theory serves only to introduce inadmissible events, several of which Plaintiff did not witness.[17]

The Court dismissed this claim with leave to amend, noting the lack of clarity regarding the specific policies being challenged. A *Monell* claim requires showing that a specific policy was the "moving force" behind a constitutional violation.[18] The Court instructed Plaintiff to "explain what your [Section] 1981 theory of *Monell* is more clearly **because it's not there now**." (Transcript at 16:14-16) (emphasis added).

A major issue with Plaintiff's Section 1981 claim is the allegation that APD officers "refus[ed] to provide mental health services when requested." (ECF 58 at ¶ 98). This pertains to her son, not Plaintiff, and contradicts the argument that officers were wrong to interact with her

---

[17] There are notable inconsistencies in Plaintiff's Section 1981 *Monell* claim. For instance, she alleges that on March 11, 2021, APD officers should not have responded to her home despite her 911 call. Yet, just a few months prior, she criticizes unknown APD officers for refusing to enter her home and take custody her son. Plaintiff cannot have it both ways.

[18] The Court stated, "it's not clear what it is the Plaintiff is challenging because it has to be the – policies, the moving force behind… the constitutional violation." (Transcript at 8:1-6).

family while simultaneously suggesting they should have intervened to provide mental health services. This contradiction sets up a "damned if you do, damned if you don't" scenario, implying officers should have detained her son, possibly against his will. These conflicting expectations are unfair and create unrealistic demands on police.

– *Plaintiff Ignored the Court's Warning Against Broad Monell Discovery and Immediate Plaintiff's Overreach*

During oral argument, Defendants predicted that Plaintiff would pursue overly broad discovery based on her *Monell* claim. The Court echoed these concerns, warning Plaintiff that any attempt to turn discovery into a fishing expedition would be quickly shut down.[19] The Court emphasized, "[P]lease do not hear this as since I blessed part of the [*Monell*] claim, the discovery doors are wide open to anything you can possibly hook to *Monell*. It won't go that way." (Transcript at 16:22-25).

Despite these warnings, Plaintiff has since served *Monell*-related discovery requests and subpoenas that far exceed the permissible scope under Rule 26. As anticipated, Plaintiff is attempting to open the discovery floodgates, which will likely require a formal discovery dispute and a forthcoming motion to quash. *Monell* buzzwords alone do not entitle Plaintiff to unfettered discovery. Defendants seek an order limiting Plaintiff's *Monell* claim to a widespread custom theory. It would assist the parties if the Court required Plaintiff to define the specific custom theory alleged. This clarity is critical to guide discovery and understand what caused the alleged constitutional violation – namely, the alleged unlawful search of one room in Plaintiff's home and the alleged seizure of "a clear bag" of unspecified contents. (ECF 58 at ¶ 44).

Notwithstanding a well-defined widespread custom theory, Plaintiff should concede that the other possible theories of *Monell* fail.

---

[19] The Court stated, "I understand Plaintiff wants to broadly plead [*Monell*] so that [s]he can have broad access to discovery, [but] you're going to run into a problem pretty quickly with me if it turns into what looks like a fishing expedition… But if you start asking for very broad ratification discovery without having something to hand it on, then that's going to get shut down very quickly… [Y]ou're going to run into some problems if you – you know, if you're using [discovery] as what looks like a fishing expedition, because *Monell* discovery can be very extensive…." (Transcript 14:24 – 15:2, 15:4-7, 16:9-12).

### D. Plaintiff Improperly Suggests a Conspiracy Claim Without Supporting Allegations

Plaintiff does not specifically allege a conspiracy cause of action, but her repeated references to a conspiracy have no place in the TAC. (See ECF 58 at ¶¶ 101-105) ("This conspiracy within the [APD] directly led to APD officers… These actions in furtherance of the conspiracy… conspired for the purpose of depriving…") (emphasis added). While her SAC vaguely referenced a "conspiracy to violate civil rights" in the dismissed Section 1981 claim (ECF 47 at ¶ 46), the TAC uses the terms "conspirators," "conspiracy," or "conspired" at least eight times, seemingly to allege a conspiracy claim. Such allegation is completely unsupported and improperly alleged, including the declaration from an unrelated criminal matter (*People v. Terryon Deshann Pugh*, Contra Costa County Superior Court case no. 1-197638-0).

The Court should dismiss and/or strike the purported conspiracy allegations, including Exhibit A, from the TAC.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant the motion to dismiss with prejudice.

Dated: September 26, 2024

CASTILLO, MORIARTY,
TRAN & ROBINSON, LLP

By: */s/ John B. Robinson*
JOHN B. ROBINSON
Attorneys for Defendants
CITY OF ANTIOCH and MICHAEL MELLONE

Dated: September 26, 2024

LITIGATION ENGINEERED

By: */s/ Chester E. Walls*
CHESTER E. WALLS
Attorneys for Defendant
OFFICER J. EWART