JOHN B. ROBINSON, State Bar No. 297065
jrobinson@cmtrlaw.com
EDWARD VIEIRA-DUCEY, State Bar No. 251405
evieira-ducey@cmtrlaw.com
CASTILLO, MORIARTY, TRAN & ROBINSON
75 Southgate Avenue
Daly City, CA  94015
Telephone: (415) 213-4098

Attorneys for Defendants
CITY OF ANTIOCH and MICHAEL MELLONE

CHESTER E. WALLS, State Bar No. 286398
cew@litg-engr.com
LITIGATION ENGINEERED
1300 E. Shaw Avenue, Suite 125
Fresno, CA 93710
Telephone: (559) 221-2775

Attorney for Defendant
OFFICER J. EWART

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN WADE, an individual | Case No. 4:23-cv-01130-DMR |
| Plaintiff, | **DECLARATION OF JOHN ROBINSON IN SUPPORT OF DEFENDANTS CITY OF ANTIOCH, JACOB EWART AND MICHAEL MELLONE'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| v. | |
| CITY OF ANTIOCH, OFFICER M. MELLONE, OFFICER J. EWART, and DOES 1-10, inclusive, | |
| Defendants. | |

I, JOHN ROBINSON, declare as follows:

1.      I am an attorney at law and duly licensed to practice before all courts of the State of California and before the United States District Court for the Northern District of California.  I am an attorney with the firm of Castillo, Moriarty, Tran, & Robinson, attorneys of record for the City of Antioch and Michael Mellone.

2.      I have personal knowledge of the following facts and could testify competently to them.

CASTILLO, MORIARTY, TRAN & ROBINSON, LLP
75 Southgate Avenue
Daly City, California 94015

3.    Attached as **Exhibit A** is a true and correct copy of the certified transcript our office received from the hearing on Defendants' Motion to Dismiss portions of Plaintiff's Second Amended Complaint, held on August 22, 2024.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed on September 26, 2024 at Daly City, CA.

_/s/ John Robinson_____
JOHN ROBINSON

CASTILLO, MORIARTY, TRAN & ROBINSON, LLP
75 Southgate Avenue
Daly City, California 94015

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBINSON DECL ISO MTD TAC
4:23-CV-01130-DMR

# EXHIBIT A

1                 UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Donna M. Ryu, Magistrate Judge

4

5  KATHRYN WADE,                    )  No. C 23-01130-DMR
                                    )
6            Plaintiff,             )
                                    )
7  vs.                             )
                                    )
8  ANTIOCH POLICE DEPARTMENT,       )
   et al.,                          )
9                                   )
            Defendants.             )
10 _____)

11

12                                  Oakland, California
                                    Thursday, August 22, 2024

13

           TRANSCRIPT OF THE OFFICIAL ELECTRONIC
14         SOUND RECORDING  1:03 - 1:26 = 23 MINUTES

15

APPEARANCES:
16

For Plaintiff:
17                           O'Melveny & Myers, LLP
                             400 South Hope Street
18                           Los Angeles, California 90071
                        BY:  JOSE J. DENEVE, ESQ.
19
                             O'Melveny & Myers, LLP
20                           2765 Sand Hill Road
                             Menlo Park, California 94025
21                      BY:  ENOCH O. AJAYI, ESQ.

22

23

24           (APPEARANCES CONTINUED ON NEXT PAGE)

25

2

```
 1  For Defendants:
                             Castillo Moriarty Tran &
 2                             Robinson, LLP
                             75 Southgate Avenue
 3                           Daly City, California 94015
                         BY: JOHN B. ROBINSON, ESQ.
 4
                             Litigation Engineered
 5                           1300 East Shaw Avenue
                             Suite 125
 6                           Fresno, California 93710
                         BY: CHESTER E. WALLS, ESQ.
 7
    Transcribed by:           Echo Reporting, Inc.
 8                           Contracted Court Reporter/
                             Transcriber
 9                           echoreporting@yahoo.com
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

1  <u>Thursday, August 22, 2024</u>                                    <u>1:03 p.m.</u>

2                      P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4          THE CLERK:  Calling Civil Case C-23-1130-DMR,

5  Kathryn Wade versus Antioch Police Department, et al.

6      Counsel, please state your appearances, starting with

7  the Plaintiff's attorneys first.

8          MR. AJAYI (via Zoom):  Good afternoon, your Honor.

9  My name is Enoch Ajayi.  I'm here with my colleague Jorge

10 deNeve.  We represent Plaintiff Kathryn Wade.

11         THE COURT:  Mr. Ajayi, Mr. deNeve, good afternoon.

12         MR. DENEVE (via Zoom):  Good afternoon.

13         MR. ROBINSON (via Zoom):  Good afternoon, your

14 Honor.  John Robinson on behalf of the City of Antioch and

15 Lieutenant Michael Mellone.

16         THE COURT:  Good afternoon, Mr. Robinson.

17         MR. WALLS (via Zoom):  And Chester Walls for

18 Defendant Jacob Ewart, your Honor.

19         THE COURT:  Mr. Walls, good afternoon.

20     Okay.  We're on the -- here for the motion to dismiss

21 the operative complaint, which is the second amended

22 complaint.  I'll be ruling from the bench today, by the way.

23     So, the first thing I want to do is sort of

24 administrative or by way of disclosure, I saw in your papers

25 that you pointed out that I was the settlement judge in one

4

1  -- in a -- in a prior case brought by Ms. Wade in -- I guess

2  there was an April 2014 incident for which she filed a

3  lawsuit or perhaps it was she and her son, and I -- I just

4  wanted to let you know that I -- I don't -- I mean, I have a

5  vague recollection that it happened.  I pulled my file just

6  to make sure that it did happen.  I don't recall anything

7  about the -- the facts of the case or -- or really the --

8  the settlement conference.  I have done hundreds upon

9  hundreds of them since, but I wanted to make sure that I

10  disclosed it to you just in case anybody -- and, so, I have

11  no -- I don't see any reason why I need to recuse from the

12  case, but I wanted to make sure that I disclose it in case

13  anybody has questions or would like to -- is considering

14  making a motion based on that disclosure.

15      Mr. Robinson?

16          MR. ROBINSON:  And, your Honor, I guess I'll start

17  because I -- I put it in the papers, and I did not put it in

18  there to suggest any of that.  It was more just to kind of

19  emphasize that that case has been resolved and -- and put

20  all the cards on the table, but I -- my clients have no

21  intention of making any kind of motion to recuse or anything

22  like that, and I apologize if that was what I suggested.

23          THE COURT:  No, no.  I really appreciate -- I

24  think it's the -- the best practice to put it out there.  I

25  wouldn't have known otherwise.  It's good for everyone to

5

1 know.  So, I appreciate that you did that.

2          Mr. Walls, your client have any concern or would

3 you like to consider filing a motion?

4          MR. WALLS:  Not at this time, your Honor.  The --

5 the pleading was really joined between Mr. Robinson and I.

6 So, it's not really new information particularly to --

7          THE COURT:  Okay.  And, Mr. Ajayi?

8          MR. AJAYI:  No issue, your Honor.

9          THE COURT:  Okay.  Great.

10     Now, moving on to the motion to dismiss, first, we have

11 just some clarification around claims one and four.  I think

12 we have now clarified that those claims for the Section 1983

13 claim based on the violation of Fourth Amendment for

14 unreasonable search and seizure and the Bane Act claim are

15 really just about the March 11th, 2021 allegedly unlawful

16 search and seizure at Ms. Wade's home.

17     Mr. Ajayi, could you please just confirm?

18          MR. AJAYI:  Yes, your Honor.  We confirm.

19          THE COURT:  Yeah.  Okay.  Okay.  So, we all know

20 that's what -- that's what it is, and the Defense has said

21 then if that's what it is, we don't have a -- a motion with

22 respect to those claims.

23     For claim two, it's brought under Section 181, but

24 under Yoshikawa, which is the 2023 en banc case for the

25 Ninth Circuit, it has to be pleaded as a 1983 case.  So,

6

1  1981 provides the substantive right, but because we have

2  state actor Defendants, it needs to be repleaded as a 1983

3  claim.  So, I'm going to grant the motion to dismiss but

4  with leave to amend so that you can reframe it as a 1983

5  claim based on a violation of 1981.

6       But I will say that it will be important in doing it.

7  You know, it's up to you how you want to frame it.  You did

8  -- the second amended complaint has some broad allegations

9  about a pattern and practice, but I -- I think it will be

10  important to assert what exactly is the injury or where --

11  what -- what is it based on.  And part of that is because

12  your complaint talks about incidents back to 2014.  So,

13  there may be a problem with the statute of limitations, for

14  example.  So, I ask that, just to avoid future pleadings

15  challenges, to make sure that when you're pleading it, it's

16  -- it's clear exactly what your client is seeking

17  compensation for, what events.  Okay?

18            MR. AJAYI:  Yes, your Honor.

19            THE COURT:  Any questions about that?

20            MR. ROBINSON:  Not from the Defense.  I guess the

21  only -- well, I think I understand.  I'll save it for the

22  end if it -- if it's not answered.

23            THE COURT:  Yeah.  I mean, they get to -- I'm not

24  going to tell them how to plead their claim.

25            MR. ROBINSON:  Sure.

7

1          THE COURT:  It's unusual to have a 1983 claim with

2    a -- based on a substantive violation of 1981.  At least in

3    -- in my experience it's unusual.  But it can be done.  It's

4    just I'm not exactly sure how they're going to plead it, but

5    I can -- just in looking at it, I see some issues around

6    just what exactly are you basing it on, what is she going to

7    seek compensation for.  For purposes of notice pleading, I

8    think it's important for the Defense to be able to

9    understand that, and the complaint actually reaches way

10   back.  And -- and, so, if there's a theory that's scooping

11   all of that in, you need to explain that in the pleading.

12   If it's -- or if it's just some of that, then -- then make

13   that clear as well.  Okay?

14          MR. AJAYI:  Understood, your Honor.

15          THE COURT:  All right.  Great.

16      Now, as for the Monell claim, which is claim three, I'm

17   going to grant the motion in part with leave to amend.  So,

18   as currently pleaded, I find that the second amended

19   complaint does adequately plead a Monell claim for municipal

20   liability with respect to the March 11th, 2021 Fourth

21   Amendment violation.  Okay.  There's an -- if that were the

22   only part of the Monell claim, they would have adequately

23   pleaded it, and Defense would -- I'm denying the motion with

24   respect to that part of the claim.  But it appears to also

25   be based on this 1981 claim, and -- and for the reasons that

8

1  I just stated, I -- I don't -- I'm going to grant the motion

2  with leave to amend as to that because it's not clear what

3  it is the Plaintiff is challenging because it has to be the

4  -- the policies, the moving force behind something, behind

5  the constitutional violation.  So, you need to explain what

6  that -- what that violation is more clearly.

7       So, I'm -- I'm granting the motion in part with respect

8  to Monell.  Okay.

9       The final part of the motion is -- is about

10  bifurcation, bifurcation of -- of discovery on Monell versus

11  rest of the case.  I do not do bifurcated discovery in -- in

12  these cases where there's Monell because it just draws the

13  -- you know, there's overlap, and it just draws the case out

14  too long, and I have never had a problem being able to

15  manage a case with a Monell claim with just discovery

16  proceeding alongside the -- the more -- the -- the non-

17  municipal liability claims.  So, that part of the request is

18  denied.

19       So, that's my ruling.  As you can see, I didn't need a

20  lot of argument.  Your papers were very clear and helpful.

21  It's just me having to decide on the law, but do you have

22  any questions or concerns you want to raise.

23       Mr. Robinson?

24           MR. ROBINSON:  Yes, your Honor.  The only -- I

25  appreciate that, and -- and I think I understand the -- the

9

1 one thing I wanted to follow up on is the Monell claim is I

2 heard the Court to say, I'm allowing a Monell claim to

3 proceed as it relates to the March 11, 2021 incident.

4        THE COURT:  They have adequately pleaded, you

5 know, with sufficient specificity about essentially all --

6 the -- the practices and I guess customs that led to --

7 they're saying led to the -- the March 11th incident.  So, I

8 don't mean to put words in the Plaintiff's counsel's mouth

9 around this.  So, Mr. Ajayi, please feel free to correct me,

10 but I think it -- you know, the basic story is Antioch's

11 history of policing and sort of allowing racist comments

12 between -- among officers going -- known to command and

13 allowing the proliferation, in their words, of a I guess

14 unequal police -- policing efforts that -- that singled out

15 African Americans, that that was the driving force behind

16 allowing this unlawful search to occur that day.

17        MR. ROBINSON:  And I guess that's where I just

18 want to -- to follow up because I read their papers to say

19 the 1983 section of the Monell claim is for a widespread

20 custom of "entering Black residents' homes without warrants,

21 in violation of the U.S. Constitution," and I just want to

22 make sure that that specifically -- the Monell claim that

23 the Court is allowing is a widespread custom, because they

24 don't argue ratification.  They don't argue an unlawful

25 policy.  They're saying there's either a failure to train or

10

1  a widespread custom of, again, entering homes unlawfully.

2  That's -- that's the argument in their papers, and I just

3  want to make sure that's the Monell claim and not the 1981

4  claim which, as the Court's said, I -- I don't see that yet.

5  I'm going to allow them leave to amend, but that's based on

6  the racist or discriminatory conduct.  The widespread custom

7  1983 claim is based on unlawfully entering homes, which is

8  what the -- the claim is about, right, the Fourth Amendment,

9  and the -- the Bane Act claim they've said is -- is narrowly

10  tailored to that March --

11          THE COURT:  I think it's --

12          MR. ROBINSON:  -- 11th, 2021 incident.

13          THE COURT:  I think it's -- it's pleaded a little

14  more broadly than that, I mean.

15      But, Mr. Ajayi, why don't you state what exactly is the

16  Monell claim with respect to the Fourth Amendment issue?

17          MR. AJAYI:  Absolutely, your Honor.  It is pleaded

18  broadly, as you mentioned.  Our Monell claim regarding the

19  Fourth Amendment issue was not only this widespread custom

20  of entering Black residents' home and searching it.  It's,

21  generally speaking, the racist comments we allege and the

22  racist culture that permeated in the department led to the

23  violation or the difference in policing that led to the

24  Antioch Police Department officers being at the home that

25  day in the first place.  So, it was this racist conduct.  It

11

1   was this difference in policing that we believe led to the

2   violation of the right, not just that there was a specific

3   pattern of violating this Fourth Amendment right, but that

4   that violation never would have occurred if not for the

5   difference in policing that she suffered.

6          THE COURT:  Okay.  But are you also saying what

7   Mr. Robinson said, which is there's a sort of -- with

8   respect to entering people's homes, there was a -- a -- a

9   custom and practice that --

10          MR. AJAYI:  Yes.

11          THE COURT:  Okay.  So, it -- it was what Mr.

12  Robinson said but more broadly, that the reason that

13  happened is because there was racist -- sort of racist

14  culture of policing in Antioch?

15          MR. AJAYI:  Yes.

16          THE COURT:  Okay.  Mr. Robinson, that's how I

17  understood it, but do you have any questions?

18          MR. ROBINSON:  Well, I don't have any questions.

19  I just want to -- you know, the initial part of the Court's

20  ruling as it relates to the 1981 claim, I read their Monell

21  claim to be in part 1983 and in part 1981.

22          THE COURT:  Yes.

23          MR. ROBINSON:  And the Court has said the 1981

24  isn't -- there's not enough there.  I need you to replead

25  that.  And -- and what I hear is the Monell claim is based

12

1  in part on what I narrowly -- tried to get narrowed down to,

2  which is unlawfully entering homes.

3           THE COURT:  Well, they --

4           MR. ROBINSON:  And there's a second --

5           THE COURT:  No.  I mean, those are not -- those

6  are not -- I don't see that they need to be broken apart.  I

7  mean, as Mr. Ajayi explained, what the story will be --

8  let's say we took out the 1981 claim completely.  The Monell

9  claim on the 1983 Fourth Amendment aspect is that because of

10 this culture of -- of, you know, racist policing -- I'm

11 going to shorthand it that way.  It's spelled out more in --

12 in the complaint -- it led to a -- a, you know, uneven

13 enforcement, including things like what Ms. Wade experienced

14 on March 11th, 2021, which is an unlawful entry and search

15 and seizure because she's Black.

16          MR. ROBINSON:  Understood.  And then just the

17 last --

18          THE COURT:  Mr. Ajayi, did I get that -- is that a

19 fair statement?

20          MR. AJAYI:  Yes, your Honor.

21          THE COURT:  Okay.  Mr. Robinson?

22          MR. ROBINSON:  The only follow up I would ask is,

23 as the Court's aware, there's different ways to prove

24 Monell, and what I hear --

25          THE COURT:  Yes.

13

1          MR. ROBINSON:  -- the Court to say is this is a

2   widespread custom theory because they didn't argue

3   ratification.  They didn't argue an unlawful written policy,

4   and I'm just trying to streamline down the road with

5   discovery and the motion for summary judgment that -- that

6   those -- those theories are limited to a widespread custom

7   or practice or a failure to train.  There's no ratification.

8   There's no unlawful written policy.

9          THE COURT:  I -- I didn't see a ratification

10  theory pleaded.  I'm not sure I saw training pleaded.  I --

11  I did -- you know, custom, policy, practice are all kind of

12  part of the same -- the -- that is one of the theories

13  essentially.  You can show it in different ways.  It's not

14  necessarily a written policy, but custom and practice can

15  amount to a policy.  That's how I understood their claim.

16         MR. ROBINSON:  Agreed.  I'm just trying to look

17  for -- because it can affect -- again, this is why we ask

18  for bifurcations.  It can affect what is requested, mainly,

19  ratification.  And -- and I know that claim can kind of open

20  the door, you know, to a lot of different discovery and then

21  a motion for summary judgment.

22         THE COURT:  Mr. --

23         MR. ROBINSON:  So, I'm just trying to --

24         THE COURT:  -- Ajayi -- oh, sorry to -- sorry for

25  interrupting.  Go ahead.

14

1          MR. ROBINSON:  No.  I -- you understand.  I -- I

2    think I've made the point.  I'm not trying to take more time

3    than -- than necessary.  It's just I'm trying to limit it to

4    -- to what I saw that was pled.

5          THE COURT:  I -- I think that's fair.

6      Mr. Ajayi.  I did not see a ratification theory.  Did

7    you mean to plead that?

8          MR. AJAYI:  Your Honor, what we pled was that

9    there was a Monell claim, and, as you've mentioned, there

10   are different ways to plead that, and we have successfully

11   pled that generally.  So, as we take discovery, it may be

12   true that there was ratification that we did not know about,

13   right.

14          THE COURT:  Okay.

15          MR. AJAYI:  So, that is a possibility that there

16   was an express policy that we did not know about.  So, the

17   question now is only whether or not we've pleaded the Monell

18   claim.

19          THE COURT:  Well, you're going to -- you know, we

20   are going to run into problem -- the reason why Mr. Robinson

21   is bringing this up, and it's a very good point, is that

22   he's trying to make sure he understands the scope of

23   discovery on Monell.  It has to be tied back to a claim or

24   defense.  And, while I understand Plaintiff wants to broadly

25   plead it so that he can have broad access to discovery,

15

1   you're going to run into a problem pretty quickly with me if

2   it turns into what looks like a fishing expedition.  On the

3   other hand, I get you don't have all the answers right now.

4   You've pleaded a Monell claim.  But if you start asking for

5   very broad ratification discovery without having something

6   to hang it on, then that's going to get shut down very

7   quickly.

8        So, that's -- that's why, you know, I'm not going to

9   shut it down now, but it's certainly not opening the door

10  wide.  If there's something you find, you know, through a

11  discussion of, I don't know, 30(b)(6) or -- or something

12  else that opens it to either -- you know, to ratification

13  theory -- what about training theory?  What would you say on

14  that?

15          MR. AJAYI:  Yes.  So, on the training theory, the

16  question is whether there was a deliberate indifference to

17  the constitutional violation.

18       So, here, if we're -- if, as we're alleging, what we're

19  finding is that numerous -- there are numerous examples of

20  searches and seizure of Black residents' homes and, as we

21  allege, there should have been or it's -- the City of

22  Antioch should have trained the officers to prevent those

23  constitutional violations, I believe we can make that claim,

24  your Honor.

25          THE COURT:  Okay.

16

1          MR. AJAYI:  And I don't think that we -- I don't
2   think that it has to be determined now that there's
3   absolutely no question as to whether there is a failure to
4   train or there's absolutely no question as to whether
5   there's ratification, because we -- we -- we can't
6   necessarily know what's within the Antioch Police Department
7   before we take discovery to find out.
8          THE COURT:  Again, so, same point.  I'm not going
9   to box you in.  On the other hand, you're going to run into
10  some problems if you -- you know, if you're using it as what
11  looks like a fishing expedition, because Monell discovery
12  can be very extensive.  So -- and it may be that Mr.
13  Robinson and Mr. Walls pushes you on another round because
14  I'm giving you leave to am end so that you can explain what
15  your 1981 theory of Monell is more clearly because it's not
16  there now.  So, the -- the motion was granted as to that
17  aspect.
18      And I've written -- I mean, you can pull up cases that
19  I've -- I've written orders on about Monell and Monell
20  theories so that you can see how I've laid out the -- the
21  Ninth Circuit law on the various ways to get to municipal
22  liability.  So, you know, it's not -- this is not going to
23  be -- please do not hear this as since I blessed part of the
24  claim, the discovery doors are wide open to anything you can
25  possibly hook to Monell.  It won't go that way.

17

1    Certainly, the core of it is -- that you pleaded so far

2  is policy, you know, custom, practice.  I'm not going to --

3  I'm not going to say anything more about ratification or

4  training at this point because we have another round of

5  briefing -- of -- of pleading to go.  Okay.  But, hopefully,

6  this has been -- has given you some idea of how I'm going to

7  look at it going forward.  Okay?

8          MR. AJAYI:  Thank you, your Honor.

9          MR. ROBINSON:  Understood, your Honor.  Thank you,

10 your Honor.

11         THE COURT:  Okay.  Any other questions about

12 Monell?

13         MR. ROBINSON:  Nothing from the City as it relates

14 to Monell.  I think I understand.

15         THE COURT:  Okay.  Any other questions about

16 anything else on today's motion?

17         MR. ROBINSON:  Not from the City.

18         MR. AJAYI:  Nothing from us, your Honor.  Nothing

19 from the Plaintiff.

20         THE COURT:  Okay.  Mr. Walls, anything?

21         MR. WALLS:  Nothing on the motion, your Honor.  I

22 see, though, on our calendar, we have a status conference

23 coming up on September 4.  I just to know if in light of the

24 Court's ruling, if we might push that out.  And I -- I also

25 have a scheduling conflict.  So, that's another reason for

18

1 asking for it.

2          THE COURT:  Yeah.  Yeah.  I think that -- that

3 makes sense.  So, let's get you a deadline for filing a

4 third amended complaint?  Can we do that within a couple of

5 weeks?  That would put you at September 5th.  Does that

6 work?

7          MR. AJAYI:  September 5th would be a little soon,

8 your Honor.

9          THE COURT:  What date would you like?

10          MR. AJAYI:  We could do September 12th, if that

11 works.

12          THE COURT:  Any objection for September 12th, Mr.

13 Robinson?

14          MR. ROBINSON:  No, your Honor.

15          THE COURT:  Mr. Walls?

16          MR. WALLS:  No, your Honor.

17          THE COURT:  Okay.  So, amended complaint is due by

18 September 12th.  And then, let's see, your -- sorry.  I'm

19 just trying to -- your next CMC's going to -- I'm going to

20 take -- vacate the September 4th and move you to October

21 30th at 1:30 by Zoom for your next CMC.  Your updated joint

22 CMC papers will be due October 23rd.  Okay.  Does that work

23 for everybody?

24          MR. ROBINSON:  Yes.

25          MR. AJAYI:  Thank you, your Honor.

19

1          MR. WALLS:  Yes.

2          THE COURT:  Okay.  Then I think we have a plan.

3  Is there anything else from anyone?

4          MR. ROBINSON:  Not from me.

5          MR. AJAYI:  Nothing from the Plaintiff.

6          THE COURT:  Okay.  Well, then I look forward to

7  seeing you in October for your CMC.  Okay.

8          ALL:  Thank you, your Honor.

9      (Proceedings adjourned at 1:26 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20

1                    <u>CERTIFICATE OF TRANSCRIBER</u>

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14  

15

16              Echo Reporting, Inc., Transcriber

17              Tuesday, September 3, 2024

18

19

20

21

22

23

24

25