1  JORGE DENEVE (S.B. #198855)
   jdeneve@omm.com
2  O'MELVENY & MYERS LLP
   400 South Hope Street, 18th Floor
3  Los Angeles, California 90071-2899
   Telephone: (213) 430-6000
4  Facsimile: (213) 430-6407

5  RAMON RAMIREZ (S.B. #280772)
   rramirez@omm.com
6  ENOCH O. AJAYI (S.B. #337392)
   eajayi@omm.com
7  O'MELVENY & MYERS LLP
   2765 Sand Hill Road
8  Menlo Park, California 94025-7019
   Telephone: (650) 473-2600
9  Facsimile: (650) 473-2601

10 Attorneys for Plaintiff
   Kathryn Wade
11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                    **OAKLAND DIVISION**

15

16 KATHRYN WADE,                          Case No. 4:23-cv-01130-DMR

17              Plaintiff,               **PLAINTIFF'S OPPOSITION TO**
                                         **DEFENDANTS' MOTION TO DISMISS**
18      v.                               **THIRD AMENDED COMPLAINT**

19 THE CITY OF ANTIOCH, MICHAEL          Date: November 14, 2024
20 MELLONE, and JACOB EWART,             Time: 1:00 p.m.
                                         Judge: Hon. Donna M. Ryu
21              Defendants.              Courtroom: 4, 3rd Floor

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   I.     INTRODUCTION ................................................................................................. 1

4   II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

5   III.   LEGAL STANDARD ......................................................................................... 4

    IV.    ARGUMENT ...................................................................................................... 5

6
           A.     Ms. Wade Has Adequately Pleaded § 1983 and *Monell* Claims Based
7                  on § 1981 .................................................................................................. 5

8                  1.     Defendants' new arguments to dismiss the Section 1981 claim are
                          waived. ......................................................................................... 5

9                  2.     Ms. Wade asserts a viable § 1981 claim against Defendants
                          Mellone and Ewart ...................................................................... 7
10
                          a.     Ms. Wade suffered discriminatory treatment at the hands of
11                               Defendants Mellone and Ewart. ..................................... 7

12                        b.     The TAC sufficiently alleges that Defendants Mellone and
                                 Ewart acted with intent to discriminate. .......................... 9

13                 3.     Ms. Wade asserts a viable § 1981 claim against Defendant Antioch. ....... 10

14                        a.     Ms. Wade suffered discriminatory treatment by APD
                                 officers for years. ........................................................... 11
15
                          b.     APD had a pervasive practice and custom of racial
16                               discrimination and did nothing to address it. ................. 12

17                 4.     Ms. Wade is entitled to redress for Defendant Antioch's violations
                          of § 1981 prior to March 11, 2021. ............................................. 14

18         B.     Ms. Wade Asserts a Viable *Monell* Claim for Fourth Amendment
                  Violations Based on (1) Policy, Custom, and Practice, and (2) Lack of
19                Training. .................................................................................................. 15

    V.     CONCLUSION ................................................................................................. 17
20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>**CASES**</u>

4
*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................ 4, 9

5
*Bagos v. Vallejo,*
   2020 WL 6043949 (E.D. Cal. Oct. 13, 2020) ...................................... 16
6

7
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................ 4

8
*City of Canton v. Harris,*
   489 U.S. 378 (1989) .............................................................. 11, 13, 14, 16
9

10
*City of St. Louis v. Praprotnik,*
   485 U.S. 112 (1988) ........................................................................ 10, 13

11
*Connick v. Thompson,*
   563 U.S. 51 (2011) ................................................................................ 10

12
*Digit. Verification Sys., LLC v. Foxit Software Inc.,*
   2022 WL 2800081 (N.D. Cal. Jan. 11, 2022) ........................................ 5
13

14
*Doe v. City of San Diego,*
   198 F. Supp. 3d 1153 (S.D. Cal. 2016) ................................................ 13

15
*Erickson v. Pardus,*
   551 U.S. 89 (2007) .................................................................................. 4
16

17
*Flores v. County of Los Angeles,*
   758 F.3d 1154 (9th Cir. 2014) .............................................................. 11

18
*Horton v. City of Santa Maria,*
   915 F.3d 592 (9th Cir. 2019) ................................................................ 10
19

20
*Hunt v. Jaglowski,*
   665 F. Supp. 681 (N.D. Ill. 1987) .......................................................... 9

21
*Hunter v. County of Sacramento,*
   652 F.3d 1225 (9th Cir. 2011) ........................................................ 11, 13

22
*In re Apple iPhone Antitrust Litig.,*
   846 F.3d 313 (9th Cir. 2017) .................................................................. 6
23

24
*Jackson v. California,*
   2014 WL 3778263 (E.D. Cal. July 30, 2014), *report and recommendation
   adopted,* 2014 WL 4192802 (E.D. Cal. Aug. 20, 2014) ...................... 8, 9

25
*Jimmie's Limousine Serv., Inc. v. City of Oakland,*
   2005 WL 2000947 (N.D. Cal. Aug. 18, 2005) ...................................... 15
26

27
*Keum v. Virgin Am. Inc.,*
   781 F. Supp. 2d 944 (N.D. Cal. 2011) .................................................... 7

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)............................................................. 5

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)............................................................. 5

*Leland v. City & County of San Francisco*,
    576 F. Supp. 2d 1079 (N.D. Cal. 2008) ........................................ 14

*Long v. County of Los Angeles*,
    442 F.3d 1178 (9th Cir. 2006).......................................................... 11

*Lukovsky v. City & County of San Francisco*,
    535 F.3d 1044 (9th Cir. 2008)........................................................ 15

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004).......................................................... 4

*Mendez v. Rutherford*,
    687 F. Supp. 412 (N.D. Ill. 1988) ................................................... 8

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)............................................................ 4

*Niantic, Inc. v. Global++*,
    2020 WL 8620002 (N.D. Cal. Sept. 2, 2020) ................................. 6

*Richardson v. City of Antioch*,
    722 F. Supp. 2d 1133 (N.D. Cal. 2010) ........................................ 16

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010)........................................................... 4

*Singh v. Bunch*,
    2017 WL 117857 (E.D. Cal. Jan. 11, 2017)................................... 8

*Stallworth v. Nike Retail Servs., Inc.*,
    2021 WL 5989962 (C.D. Cal. Nov. 12, 2021) ................................. 9

*State of Nev. v. Watkins*,
    914 F.2d 1545 (9th Cir. 1990).......................................................... 6

*Taleff v. Sw. Airlines Co.*,
    828 F. Supp. 2d 1118 (N.D. Cal. 2011), *aff'd*, 554 F. App'x 598 (9th Cir.
    2014) ............................................................................................... 14

*Thompson v. C & H Sugar Co.*,
    2014 WL 1266804 (N.D. Cal. Mar. 24, 2014)............................ 2, 15

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012).......................................................... 10

*Williams v. County of Alameda*,
    26 F. Supp. 3d 925 (N.D. Cal. 2014) ............................................. 16

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3   <u>**STATUTES**</u>

4   42 U.S.C. § 1981 ...................................................................................................................... 6

5   <u>**RULES**</u>

6   Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 5

7   Fed. R. Civ. P. 12(f) ................................................................................................................. 5

8   Fed. R. Civ. P. 15(a)(2) ........................................................................................................... 16

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**I.      INTRODUCTION**

2          Since at least 2014, the City of Antioch Police Department (the "APD") has subjected

3    Plaintiff Kathryn Wade to discriminatory treatment.  APD officers have pointed guns at her

4    without justification, stopped her and her son's vehicle without legitimate grounds but to harass

5    her, required that at least three officers confront her when she requested assistance, refused to

6    provide emergency assistance when she requested it, and, on March 11, 2021, conducted an

7    unconstitutional warrantless search of her home.  When, in April 2023, news outlets revealed that

8    at least 40% of APD officers had engaged in vile, racist text exchanges for years, it became clear

9    that the APD's unfair treatment of Ms. Wade, a Black woman, was a result of the racist culture

10    that permeated the APD.  That mistreatment was also in violation of 42 U.S.C. § 1981, which

11    requires that Defendant City of Antioch and the two officer defendants treat Ms. Wade as they

12    would a White resident.

13          Her Second Amended Complaint ("SAC") asserted claims based on violations of

14    42 U.S.C. § 1981 in addition to her existing claims based on Defendants' violations of her Fourth

15    Amendment right when APD officers, including Defendants Mellone and Ewart, searched her

16    home without a warrant and after Ms. Wade had explicitly made clear that she did not consent to

17    a search.  Defendants then moved to dismiss those new claims and the Court granted the motion

18    to dismiss in part with leave to amend.

19          In response to the Court's instructions, the Third Amended Complaint (the "TAC")

20    repleads Ms. Wade's claims based on violations of § 1981 as claims under 42 U.S.C. § 1983.

21    Ms. Wade has also identified the mistreatment that she suffered as a result of Defendants' § 1981

22    violation.  Even though these claims were included in the SAC, Defendants for the first time now

23    argue that Ms. Wade has failed to allege discriminatory intent.  But Defendants waived that

24    argument by failing to raise it when they moved to dismiss the SAC.  And, in any event,

25    Ms. Wade has sufficiently alleged that the APD officers who mistreated her had discriminatory

26    intent.  As the Court previously stated, Ms. Wade alleges that Antioch's culture of racist policing

27    was "the driving force behind allowing [the] unlawful search …."  (Dkt. 59-1, Ex. A ("MTD Tr.")

28

at 9:4-16).)  That racist policing was the driving force behind all of the APD's mistreatment of

Ms. Wade.  In two sentences, Defendants also argue that the statute of limitations preclude

Ms. Wade from seeking relief for APD's racist treatment.  But Ms. Wade had no way of knowing

that racism permeated the whole APD until the bombshell disclosure of APD racism in

April 2023.  Under those circumstances, the statute of limitations was tolled until April 2023

under the equitable tolling doctrine.  Even if Ms. Wade suspected she was mistreated because of

her race, that would not have been enough to start the statute of limitations period.  *See Thompson*

*v. C & H Sugar Co.*, 2014 WL 1266804, at *7 (N.D. Cal. Mar. 24, 2014) (tolling the limitations

period on a § 1981 claim).

The TAC also alleges that Defendant City of Antioch is liable under a *Monell* theory of

liability for, among other grounds, a failure to train APD officers with respect to racial

discrimination and searches under the Fourth Amendment.  In terms of racial discrimination, the

racist texts were so widely circulated within the APD, including supervisors and sergeants, that

the need for further training was patently obvious.  Indeed, even the mayor of Antioch

acknowledged that racism was a systemic failure in the APD.  (TAC ¶ 55.)  This sufficiently

alleges that the APD's training was inadequate.  Similarly, the TAC alleges numerous cases in

which the City has been sued for searches that violate the Fourth Amendment.  Given that

searches are a routine part of a police officer's job, those cases serve as sufficient notice to

Antioch that the APD's training on the subject was inadequate.  The TAC's allegations are

sufficient to defeat Defendants' argument that the Court should prevent Ms. Wade from relying

on inadequate training to prove her *Monell* claims.

For these reasons, the Court should deny in full Defendants' motion to dismiss.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Since at least 2014, Plaintiff Kathryn Wade has been a resident of the City of Antioch.

And since at least 2014, Ms. Wade has been targeted and mistreated by the Antioch Police

Department ("APD").  For years, APD and its officers, including Defendants Mellone and Ewart,

engaged in repeated civil rights violations and other misconduct against Black citizens living in

Antioch.  (TAC ¶¶ 6, 13.)

In April 2014, APD officers brutally assaulted Ms. Wade's son, Malad Baldwin, in front of Ms. Wade's house.  (*Id*. ¶ 16.)  In the same month, an APD officer verbally assaulted and pointed a gun at Ms. Wade while she was in a wheelchair.  (*Id*. ¶ 17.)  A few years later APD officers subjected her to multiple pretextual stops where no traffic or legal violation had occurred.  (*Id*. ¶¶ 23-24.)  Her mistreatment continued with APD officers, including Defendant Mellone, beating Mr. Baldwin without legal justification at least three times in September 2019, December 2019, and March 2020, while knowing that he was Ms. Wade's son and obstructing her from reaching him.  (*Id*. ¶¶ 25, 26, 28-30.)  Further mistreatment continued in 2020 with APD officers again pointing a gun at her unwarranted (*id*. ¶ 27) and placing a flag on her address requiring a three- or four-officer minimum for service at that address at least in part because Ms. Wade was "hostile with PD."  (*Id*. ¶¶ 48-50.)

Then, on March 11, 2021, Ms. Wade sought emergency medical help for her son and explicitly requested that no police officers be sent to her house.  (*Id*. ¶¶ 37-38.)  Nevertheless, at least three APD officers arrived, entered, and searched her house without a warrant and after Ms. Wade refused to consent.  (*Id*. ¶¶ 40-45.)  On March 10, 2023, Ms. Wade filed her original complaint.

On March 27, 2023, the FBI and the Contra Costa County District Attorney's Office issued a 21-page investigative report disclosing that APD officers exchanged hundreds of offensive text messages riddled with vile language about Black people, including references to Ms. Wade's son, Malad Baldwin.  (*Id*. ¶ 3.)  The report detailed "derogatory, homophobic, and sexually explicit language and photographs shared by members of the Antioch Police Department that ***demonstrate their racial bias and animus towards African Americans*** …."  (*Id*. ¶ 4 (emphasis added).)  An expert who examined these text messages opined that "[t]he fact that there were supervisors included in these text exchanges, and that one officer remarked the N-word was 'commonly used around the PD,' including by supervisors, indicates that this is not just a matter of a 'few bad apples' in the Antioch Police Department."  (*Id*. ¶ 53.)  Even the mayor of Antioch acknowledged the racist culture at the APD, when he stated in March 2023: "We're not going to pretend that we have a few issues with a few bad apples. It is clear we have

cultural and systemic problems that persist to this very day." (*Id.* ¶ 55.) On or about April 11, 2023, after news of the investigative report was publicized, Ms. Wade learned that the civil rights violations she and her son endured resulted from the systemic racial bias permeating the Antioch Police Department. (*Id.* ¶¶ 3, 66, 78.)[1]

After obtaining court-appointed counsel, Ms. Wade filed a Second Amended Complaint on May 13, 2024 including allegations of racial bias under Section 1981. (Dkt. 47.) Defendants moved to dismiss on June 17, 2024. (Dkt. 48.) On August 22, 2024, the Court held a hearing on the motion granting and denying in part with leave to amend. (Dkt. 55.) On September 12, 2024, Ms. Wade filed her Third Amended Complaint implementing the Court's instructions in revising her complaint. (Dkt. 58.) On September 26, 2024, Defendants filed their motion to dismiss. (Dkt. 59 ("Mot.").)

## III.    LEGAL STANDARD

A motion to dismiss will be denied where the complaint's allegations plausibly show that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and construe them in the light most favorable to the plaintiff. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). The court may dismiss a claim "only where there is no cognizable legal theory" or an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).

Defendants seek to dismiss Ms. Wade's § 1981 claim by asking her to meet a high threshold of *proof* of intentional discrimination. But this is not the standard; the only question on a motion to dismiss is whether Ms. Wade has *plausibly* stated a claim upon which relief may be found; she undoubtedly has. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint

---

[1] The investigative report was released to the public on April 13, 2023. (*Id.* ¶ 51.)

1    must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

2    on its face.'").

3        Defendant Antioch also seeks to limit the § 1983 *Monell* claim against it to a custom of

4    warrantless entry.  But this is not what Ms. Wade alleged and Defendant Antioch cannot provide

5    adequate support for the Court to so limit the claim.  The question on a motion to dismiss is

6    whether Plaintiff has plausibly alleged a claim and here, she has.

7        Along with claiming a high threshold of proof, Defendants repeatedly refer to material

8    such as Ms. Wade's deposition that is outside the Complaint and not judicially noticeable.

9    Generally, district courts "may not consider any material beyond the pleadings" when assessing

10   the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Lee v.*

11   *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  "When 'matters outside the pleading are

12   presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for

13   summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Then, both parties must have the

14   opportunity 'to present all the material that is pertinent to the motion.'"  *Khoja v. Orexigen*

15   *Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Defendants' repeated attempts to insert

16   materials beyond the allegations are improper and must be rejected.[2]

17   **IV.    ARGUMENT**

18       **A.    Ms. Wade Has Adequately Pleaded § 1983 and *Monell* Claims Based**
             **on § 1981.**
19

20           **1.    Defendants' new arguments to dismiss the Section 1981 claim are**
                    **waived.**

21       Defendants have waived any objection that they could have asserted, but neglected to

22   assert, in their prior motion to dismiss the Second Amended Complaint.  Specifically, Defendants

23

24

25   [2] Defendants twice request, without any legal support, that the Court strike allegations from the
     TAC.  (Mot. at 9, 12.)  Defendants' notice, however, does not indicate that they are moving to
26   strike, and Defendants do not even bother to address the standard for granting a motion to strike
     under Rule 12(f) of the Federal Rules of Civil Procedure.  Furthermore, motions to strike are
27   disfavored.  *Digit. Verification Sys., LLC v. Foxit Software Inc.*, 2022 WL 2800081, at *1
     (N.D. Cal. Jan. 11, 2022).  The Court should summarily deny Defendants' requests to strike.
28

1    have waived any Rule 12(b)(6) argument that the TAC supposedly failed to allege sufficient facts

2    showing the intentional discrimination element.

3          "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim

4    defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion

5    under Rule 12(b)(6)."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017).

6    Courts in this District have previously "follow[ed] several others within the Ninth Circuit which

7    have found that 'amending or consolidating a complaint does not give defendants a second

8    opportunity to raise waived objections.'"  *Niantic, Inc. v. Global++*, 2020 WL 8620002, at *3

9    (N.D. Cal. Sept. 2, 2020).

10         Defendants previously only moved to dismiss the Section 1981 claim in the SAC on the

11   basis that (1) Ms. Wade's claims did not involve the making and enforcing of a contract, and

12   (2) § 1981 claims against state actors, such as defendant police officers, must be brought under

13   § 1983.  (Dkt. 48 at 6-7 (§ III.C).)  Defendants only belatedly and improperly raised an objection

14   to the intentional discrimination element in their Reply (Dkt. 54 at 4-7 (§ I.A)), and the argument

15   was waived as untimely.[3]  *See State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990)

16   ("[Parties] cannot raise a new issue for the first time in their reply briefs." (citations omitted)).

17         The Court dismissed the § 1981 claim with leave to amend so that the claim could be

18   re-pleaded under § 1983.  (*See* MTD Tr. at 5:23-6:5.)  Ms. Wade's TAC does so.  The factual

19   basis for this claim in the TAC, though more specific, is substantially the same as in the SAC.

20   Because Defendants did not raise a timely objection to the sufficiency of Ms. Wade's allegations

21   of intentional racial discrimination in the SAC, they have waived this objection.

---

25   [3] The Court did not directly address Defendants' argument about the sufficiency of the racial
26   discrimination element of Ms. Wade's Section 1981 claim during the MTD hearing, and
     Ms. Wade did not have the opportunity to address it in prior briefing because it was untimely
27   raised.  But the Court stated that Ms. Wade pled with sufficient specificity, in the context of the
     Fourth Amendment violation, that Antioch's culture of racist policing was "the driving force
28   behind allowing this unlawful search to occur that day."  (MTD Tr. at 9:4-16).)

2.      **Ms. Wade asserts a viable § 1981 claim against Defendants Mellone and Ewart**

Not only is Defendants' argument waived, it also fails substantively.  Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory … to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.  "To state a claim pursuant to section 1981, a plaintiff must allege (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011).

Here, there is no question that Ms. Wade is a member of a racial minority: she is Black. (TAC ¶ 1.)  Ms. Wade was also harmed by discriminatory policing depriving her of the statutory right to the full and equal benefit of all laws and proceedings for the security of persons and property by the intentional discrimination displayed by Defendants Mellone and Ewart. (*Id.* ¶¶ 64-65.)

a.      **Ms. Wade suffered discriminatory treatment at the hands of Defendants Mellone and Ewart.**

Defendant Mellone engaged in the following discriminatory practices against Ms. Wade:

- **March 2020 Beating**: In March 2020, Antioch police officers, including Defendant Mellone, brutally beat Ms. Wade's son and despite knowing who he was, feigned ignorance and had him admitted to a hospital as a John Doe. (*Id.* ¶ 28.)  As a result, Ms. Wade was subjected to emotional distress as she desperately tried to locate him but could not since officers admitted him as a John Doe. (*Id.*)  When she located him, she was further distressed to see him puffy, bruised, and to learn that officers shot at him during this incident and at least one officer jeered, "so monkeys can run, huh?" (*Id.* ¶¶ 29-30.)  There is no better way to harm a mother than to assault her son, and she suffered severe emotional harm during this incident, after having protested the

1    mistreatment of her son.  (*Id*. ¶¶ 22, 31.)  Through this conduct, Defendant Mellone in

2    conjunction with his fellow APD officers denied Ms. Wade of the full and equal

3    benefit of all laws and proceedings because of her race.  *See Jackson v. California*,

4    2014 WL 3778263, at *8 (E.D. Cal. July 30, 2014), *report and recommendation*

5    *adopted*, 2014 WL 4192802 (E.D. Cal. Aug. 20, 2014) (citing *Mendez v. Rutherford*,

6    687 F. Supp. 412 (N.D. Ill. 1988) (racially motivated arrest and beating fall within the

7    like punishment and equal benefits clause of section 1981)).

8    • **March 2021 Incident**: In March 2021, Ms. Wade was subjected to emotional distress

9    and a violation of her civil rights by Defendant Mellone who entered and ordered

10    officers to search her home disregarding her explicit refusal to consent to that search.

11    (TAC ¶¶ 37-40.)  She had to witness the APD officers—who had tormented Plaintiff

12    and her son for several years—disregard her refusal to allow a search and rummage

13    through her house amid the turmoil of her son fighting for his life.  (*Id*. ¶ 65.)

14    Defendant Mellone disregarded her refusal to consent to the search and ordered his

15    fellow officers to conduct a search as a result of intentional targeting because of her

16    race, including the officer-minimum tags placed on her address.  (*Id*. ¶¶ 65-66.)

17    Through this conduct, Defendant Mellone denied Ms. Wade of the full and equal

18    benefit of all laws and proceedings because of her race.  *See, e.g.*, *Singh v. Bunch*,

19    2017 WL 117857, at *6 (E.D. Cal. Jan. 11, 2017) (collecting cases recognizing claims

20    involving racial discrimination in law enforcement activities as falling within § 1981's

21    "equal benefit" clause).

22    Defendant Ewart also engaged in discriminatory practices against Ms. Wade in connection

23    with the March 2021 search of Ms. Wade's house.  Like Mellone, Ewart subjected Ms. Wade to

24    emotional distress and a violation of her civil rights by entering and searching her home in

25    disregard of her explicit refusal to consent to that search and her demand that the APD officers

26    leave her house.  (TAC ¶¶ 37-40.)  Through this conduct, Defendant Ewart denied Ms. Wade of

27    the full and equal benefit of all laws and proceedings because of her race.  *See, e.g.*, *Singh*, 2017

28

WL 117857, at *6 (collecting cases recognizing claims involving racial discrimination in law

enforcement activities as falling within § 1981's "equal benefit" clause).

### b.    The TAC sufficiently alleges that Defendants Mellone and Ewart acted with intent to discriminate.

Defendants claim the Section 1981 claim fails because of a "Failure to Allege Overt Acts

of Purposeful Discrimination on March 11, 2021." (Mot. at 5.) A case cited by Defendants

recognizes that when it comes to racial discrimination, "[i]nsisting on detailed factual allegations

is particularly inappropriate" because it "concerns the defendant's state of mind." *Hunt v.

Jaglowski*, 665 F. Supp. 681, 68384 (N.D. Ill. 1987) (denying motion to dismiss §§ 1981 and

1983 claims arising from Black plaintiff's arrest, beating, and interrogation by police officers).

"Although the racist remarks of [a defendant police officer's] colleagues provide clear windows

into the souls of those officers, the omission of such remarks by [that police officer] is

inconclusive; a police officer who violates an individual's rights because of his race does not

always announce his motive." *Id.*.  Therefore, a § 1981 claim is sufficiently pled under the

plausibility pleading standard,[4] as long as there are allegations of "facts susceptible to infer

discriminatory intent." *Jackson*, 2014 WL 3778263, at *6, *8; *see also Stallworth v. Nike Retail

Servs., Inc.*, 2021 WL 5989962, at *8 (C.D. Cal. Nov. 12, 2021) (finding evidence of defendant's

discriminatory attitude in general is relevant to prove race discrimination because "'[t]here will

seldom be "eyewitness" testimony as to the [defendant]'s mental processes'").

Here, Ms. Wade alleges facts of substantial discriminatory animus and bias permeating

the APD based on the racist text messages uncovered through the Contra Costa County's District

Attorneys Office's Investigatory Report. (TAC ¶¶ 3-5, 51-56.) These messages were shared with

at least 40% of APD's officers, including Defendant Ewart (*id*. ¶¶ 4, 12), and include messages in

---

[4] Defendants argue for dismissal of the § 1981 by claiming that the TAC "fail[s] to meet the 'high threshold of proof' required for a Section 1981 claim" (Mot. at 7), citing a summary judgment case from the Sixth Circuit. Unlike the summary judgment stage, there is no requirement of proof when reviewing the sufficiency of a complaint. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

which APD officers joke about the brutal 2014 beating of Ms. Wade's late son. (*Id*. ¶ 52.) These messages exhibited a systemic culture of racism and racist animus within the APD. (*Id*. ¶ 53.) As an expert on racial history concluded, "The fact that there were supervisors included in these text exchanges, and that one officer remarked the N-word was 'commonly used around the PD,' including by supervisors, indicates that this is not just a matter of a 'few bad apples' in the Antioch Police Department." (*Id*.) Even Antioch's mayor recognized in March 2023 that racism was rampant at the APD, when he stated, "We're not going to pretend that we have a few issues with a few bad apples. It is clear we have cultural and systemic problems that persist to this very day." (*Id*. ¶ 55.) APD officers targeted Ms. Wade for disparate treatment because of her race. (*Id*. ¶ 56; *see also id*. ¶¶ 6, 13-16, 21, 57, 66-68, 91.) Defendants Mellone and Ewart were two of the officers who engaged in that conduct.

### 3. Ms. Wade asserts a viable § 1981 claim against Defendant Antioch.

The City of Antioch is liable under § 1983 *Monell* for subjecting Ms. Wade to deprivation of her right to be free from racial bias by APD officers in violation of 42 U.S.C. § 1981. A municipality may face § 1983 *Monell* liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Among other grounds, a municipality can be held liable under *Monell* for "a pervasive practice or custom" or "a failure to train, supervise, or discipline." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Ms. Wade has alleged that a pervasive practice or custom, and a failure to train, supervise, or discipline have caused the deprivation of her rights under Section 1981.

For custom and practice, a plaintiff sufficiently alleges a *Monell* claim when "an 'official policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). A "plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "[E]vidence of inaction" by the municipality "can support an inference that an unconstitutional custom or

practice has been unofficially adopted by a municipality." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1234–35, n.8 (9th Cir. 2011).

For training, "failure to train or inadequate training may form the basis for municipal liability under § 1983 where the training or failure to train amounts to deliberate indifference to the rights of the persons with whom the municipality's employees come into contact. *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014); *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). Under such a theory, the "issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186. A municipality is deliberately indifferent when the need for more or different action is "so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

The TAC specifically alleges that, for years, APD officers provided disparate policing of Ms. Wade because of her race. That conduct violates her rights under § 1981. The TAC also clearly alleges that the mistreatment of Ms. Wade was a result of an APD custom and culture that allowed, and celebrated, racial discrimination.

> **a.    Ms. Wade suffered discriminatory treatment by APD officers for years.**

Contrary to Defendants' mischaracterization (Mot. at 7), the TAC provides specific examples from April 2014 through March 2021 of the police causing Ms. Wade emotional harm and violating her civil rights because of the racial discrimination promoted within the APD, including the following:

- An APD officer verbally assaulting and wrongfully pointing a gun at her while she was in a wheelchair (TAC ¶ 17);

- APD officers using a pretextual stop to search a U-Haul truck used by her and her son to transport furniture (*id*. ¶ 23);

- APD officers again pretextually stopping her car while she was driving with her son (*id.* ¶ 24);

- APD officers beating her son and preventing him from calling her (*id.* ¶ 25);

- APD officers assaulting her son on false pretexts (*id.* ¶ 26);

- APD officers accosting her and again pointing a gun at her without provocation or cause (*id.* ¶ 27);

- APD officers beating her son, shooting at him, and admitting him as a John Doe such that she could not find him for days (*id.* ¶¶ 28-30);

- APD officers placing a flag on her address requiring a three- or four-officer minimum for service at that address at least in part because Ms. Wade was "hostile with PD" (*id.* ¶¶ 48-50);

- APD officers refusing to provide medical assistance when she requested it on multiple occasions (*id.* ¶¶ 33-35); and

- APD officers entering and searching her home without a warrant and despite her explicit refusal to consent (*id.* ¶¶ 40-45).

These actions were animated by the racial bias permeating the APD, as evidenced by the wide circulation of racist text messages among officers and supervisors within the APD.  (*Id.* ¶¶ 3-5, 51-56.)

### b.    APD had a pervasive practice and custom of racial discrimination and did nothing to address it.

The TAC alleges facts showing both that (1) APD had a pervasive practice and custom of racism in their policing, and (2) APD failed for years to train, supervise, or discipline officers engaged in racially discriminatory policing.  As such, Ms. Wade has sufficiently alleged a *Monell* claim against Defendant Antioch for violating § 1981.

The TAC alleges that APD officers acted pursuant to policies, practices, or procedures of the APD that condoned and encouraged the abuse of police authority in disregard of the constitutional rights of Black citizens.  (*Id.* ¶¶ 92-94, 96.)  This reprehensible culture of the APD was finally revealed on April 11, 2023 through news reporting on a slew of racist text messages.

1   These racist text messages were exchanged with at least 45 APD officers, in a department of only

2   115 officers.  (*Id*. ¶ 4.)  APD supervisors and sergeants participated in these vile exchanges.  (*Id.*)

3   The fact that supervisors were included in these exchanges shows that racial bias and animus are

4   systemic in the APD.  (*Id*. ¶¶ 53, 55.)

5         The Ninth Circuit has long recognized that "a custom or practice can be inferred from

6   widespread practices or evidence of repeated constitutional violations for which the errant

7   municipal officers were not discharged or reprimanded."  *Hunter*, 652 F.3d at 1233 (internal

8   quotations omitted).  The nature and extent of the text messages reveal a widespread APD

9   practice that is "so permanent and well settled as to constitute a custom or usage with the force of

10  law."  *City of St. Louis*, 485 U.S. at 127.

11        The TAC also alleges that Defendant Antioch failed to adequately train and supervise

12  officers to prevent the APD officers' racial animus and bias from resulting in unreasonable

13  searches and seizures, racial profiling in traffic stops, the use of harassment and intimidation in

14  police conduct, and refusal to provide mental health services when requested.  (TAC ¶¶ 95, 98,

15  99.)  "[T]he inadequacy of police training may serve as the basis for § 1983 liability [] where the

16  failure to train amounts to deliberate indifference to the rights of persons with whom the police

17  come into contact."  *Doe v. City of San Diego*, 198 F. Supp. 3d 1153, 1167 (S.D. Cal. 2016)

18  (finding plaintiff sufficiently alleged failure to train where it could "reasonably be inferred that

19  failure to provide adequate training is likely to lead to Fourth Amendment violations.… Plaintiff

20  alleged that inadequate training was provided, and that the failure to properly train the officers

21  caused the violation of her Fourth Amendment rights.").  A municipality is deliberately

22  indifferent when the need for more or different action is "so obvious, and the inadequacy [of the

23  current procedure] so likely to result in the violation of constitutional rights, that the policymakers

24  ... can reasonably be said to have been deliberately indifferent to the need."  *City of Canton*,

25  489 U.S. at 390.

26        The mistreatment that Ms. Wade suffered took place at the same time that APD officers—

27  including supervising and command staff—were explicitly expressing disdain for the rights of

28  Black residents, as shown by the texts disclosed in the 2023 investigative report.  (*Id*. ¶¶ 3-6, 12,

51-52.) The anti-Black text messages were so widely disseminated within the APD that it is clear that racism was a part of the APD culture. (*Id.* ¶¶ 53, 55.) Additionally, the APD Chief reviewed all complaints against the APD. (*Id.* ¶ 54.) These facts more than adequately support an inference that APD "leadership knew or must have known of the actions and attitudes reflected in" those texts.[5] (*Id.* ¶ 94.) But Antioch took no steps—neither training nor discipline—to help prevent APD officers from violating Black residents' constitutional rights. (*Id.* ¶¶ 98-99.) The text messages demonstrate that the need for more or different action was "so obvious … that the policymakers … can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The TAC pleads sufficient facts regarding the inadequacy of training and supervision by Defendant Antioch.

### 4. Ms. Wade is entitled to redress for Defendant Antioch's violations of § 1981 prior to March 11, 2021.

Defendants make a two-sentence argument that Plaintiff improperly relies on time-barred incidents "to infer racial animus by the defendant officers on March 11, 2021." (Mot. at 6.) Defendants' argument ignores the actual claim made by Ms. Wade. Ms. Wade is not merely seeking to show racial animus based on the mistreatment she received before March 11, 2021.[6] She is seeking relief—and is entitled to relief—for the actions of APD officers going back to April 2014. Because the statute of limitations was tolled until April 2023, when the racist, disparate treatment of Black residents by APD was revealed, her § 1981 claim is not barred.

Under the equitable tolling doctrine, if "a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information

---

[5] *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1121 (N.D. Cal. 2011), *aff'd*, 554 F. App'x 598 (9th Cir. 2014) (to evaluate a motion to dismiss, "the court 'must presume all factual allegations of the complaint to be true[,] draw all reasonable inferences in favor of the nonmoving party,'" and resolve "[a]ny existing ambiguities" "in favor of the pleading").

[6] But even if Ms. Wade was seeking to use prior incidents to show racial animus, these incidents "may nevertheless be admissible as background evidence in support of a timely [discrimination] claim." *Leland v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1092 n.4 (N.D. Cal. 2008).

[they] need[]." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (quotations omitted). Courts in this District have tolled the statute of limitations where a plaintiff could not have known that an action was based on discriminatory intent. *See Thompson v. C & H Sugar Co.*, 2014 WL 1266804, at *7 (N.D. Cal. Mar. 24, 2014) (tolling the limitations period on a claim for employment discrimination in violation of § 1981 on a motion for summary judgment). In *Thompson*, the court stated, "It may be that [a plaintiff] suspected race discrimination long before" the challenged conduct, "or that she should have suspected as much." *Id.* That, however, is not enough. Defendants must point to evidence, or in this case allegations, "demonstrating [plaintiff's] notice of possible discrimination." *Id.* Defendants here simply fail to do so.

Here, Ms. Wade suffered at the hands of APD for years, but she never knew that the motivating factor for the APD officers' conduct was racial discrimination. Indeed, she filed numerous citizen complaints and the APD never disciplined or reprimanded officers, sending a message to Ms. Wade that APD found nothing wrong. It was not until April 11, 2023, when a local newspaper revealed details of the racist text messages, that she learned that her mistreatment was the result of the APD's rampant bigotry and racism. (*See* TAC ¶¶ 3, 66, 78.) She amended her complaint to assert those claims on May 13, 2024. (Dkt. 47.) That is well within the applicable two-year statute of limitations. *Jimmie's Limousine Serv., Inc. v. City of Oakland*, 2005 WL 2000947, at *3 (N.D. Cal. Aug. 18, 2005) ("the statute of limitations for claims under both 42 U.S.C. 1981 and 1983 is two years").

> **B.      Ms. Wade Asserts a Viable *Monell* Claim for Fourth Amendment Violations Based on (1) Policy, Custom, and Practice, and (2) Lack of Training.**

Defendant Antioch does not seek to dismiss Plaintiff's 1983 *Monell* claim for Fourth Amendment violations. Instead, it seeks "to limit the scope of the viable *Monell* claim" solely to its "widespread custom and policy." (Mot. at 2.) In other words, even though Ms. Wade alleges a sufficient claim for violation of her right to be free from warrantless searches and even though APD officers regularly engaged in searches as part of their job, Defendant Antioch wants the Court to disregard the alleged lack of adequate training over a core aspect of an officer's job. (*See* TAC ¶ 74.)

1    But a municipality is liable when the need for more or different action is "so obvious, and

2    the inadequacy ... so likely to result in the violation of constitutional rights, that the policymakers

3    ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton*,

4    489 U.S. at 390.  The TAC provides several examples of plaintiffs raising Fourth Amendment

5    violations which demonstrates the obvious need for training and a deliberate indifference to the

6    need.[7]  (TAC ¶ 75.)  Defendants argue none of these examples resulted in plaintiff verdicts.  But

7    as a case cited by Defendants makes clear, "the results of these previous cases are not necessarily

8    relevant" at the motion to dismiss stage.  *Bagos v. Vallejo*, 2020 WL 6043949, at 5 (E.D. Cal.

9    Oct. 13, 2020).  "Prior incidents involving lawsuits alone, even those which do not result in a

10   finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of

11   a motion to dismiss." *Id.*

12   Defendants also rely on *Bagos* for the proposition that the prior incidents referenced in the

13   TAC are not "sufficiently similar" under *Monell*.  (Mot. at 9 n.16.)  This reliance is misplaced.  In

14   *Bagos*, the court made distinctions regarding what was alleged, noting on training, for example,

15   that the training on deadly force "involves standards and training distinct from the use of force

16   otherwise." (*Id.* at 6.)  But this case does not involve use of force.  Here, APD officers engaged

17   in a search in violation of the Fourth Amendment.  The complaint provides numerous instances

18   where the APD violated the Fourth Amendment rights of racial minorities by conducting

19   unconstitutional searches.  (TAC ¶¶ 23, 40-45, 75.)  Additionally, where a "Plaintiff has alleged

20   sufficient facts that, if proven, may establish that the consequences of the [government's] failure

21   to train were so 'patently obvious,'" the government "can be held liable under § 1983 without

22   proof of a preexisting pattern of violations." *Williams v. County of Alameda*, 26 F. Supp. 3d 925,

23   948 (N.D. Cal. 2014).  The TAC has alleged sufficient facts showing that violation of Black

24   residents' Fourth Amendment rights would obviously be the consequence of Antioch's failure to

25

26

27   [7] *See also Richardson v. City of Antioch*, 722 F. Supp. 2d 1133 (N.D. Cal. 2010)
(granting plaintiff cross summary judgment on allegation of warrantless entry and search by APD

28   officers of Black resident's home.)

PL.'S OPP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT
4:23-CV-01130-DMR

1    act, in light of the racist text messages shared among a substantial number of APD officers and

2    APD's leadership.

3    **V.      CONCLUSION**

4          For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

5    Alternatively, if the Court is inclined to grant any part of the motion, Plaintiff respectfully

6    requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

7          Dated:  October 10, 2024

8                                              JORGE DENEVE
                                              RAMON RAMIREZ
9                                              ENOCH O. AJAYI
                                              O'MELVENY & MYERS LLP

10
                                              By:      /s/ *Jorge deNeve*
11                                                     Jorge deNeve

12                                              *Attorneys for Plaintiff Kathryn Wade*